UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RELIABLE AMBULANCE SERVICE OF LAREDO, INC., | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-3 |
| | § | |
| ERIC D HARGAN, | § § | |
| Defendant. | § | |

## ORDER

Before the Court are the parties' cross Motions for Summary Judgment. (D.E. 19 and D.E. 20, 21). This case has been reassigned to the undersigned upon consent of the parties pursuant to 28 U.S.C. § 636(c). (D.E. 13-15). At issue is whether Plaintiff Reliable Ambulance Service, Inc. ("Reliable") satisfied the Medicare requirements for reimbursement for non-emergency ambulance services to transport its patient (the Medicare beneficiary) to treatments for wound care of ulcers on her heels. The Medicare Appeals Counsel ("Secretary") – the final level of administrative review on behalf of the Secretary of Health and Human Services – issued its opinion finding the Medicare requirements were not satisfied. For the reasons set forth below, Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED**.

### I. JURISDICTION AND VENUE

This Court has jurisdiction to review the Secretary's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1395ff(b). There is no dispute Reliable exhausted its

1 / 9

administrative remedies, culminating in the Secretary's decision entered November 1, 2017, or that this federal complaint is timely. (D.E. 11-1, Pages 1-8). Further, venue is proper in this Court because the acts or omissions giving rise to this action occurred in the Southern District of Texas.

**II.    BACKGROUND**

Reliable is an ambulance service proving non-emergency transfers of patients between patients' residences and health care facilities. Reliable has a contract with Medicare to provide services to eligible patients, also referred to as beneficiaries. The Center for Medicare and Medicaid Services ("CMS"), a division of the Department of Health and Human Services, administers the Medicare program. CMS contracts with private insurance carriers to carry out many audit and payment functions. Trailblazer Health Enterprises, LLC ("Trailblazer") was the private insurance carrier who contracted with Medicare in Texas during the relevant time period.

Reliable transported Maria L. Rodriguez ("beneficiary"), then age 81 years old, via ambulance roundtrip from her residence to a hospital for hyperbaric wound care and debridement treatments on her heels six times between April 2, 2012 to April 30, 2012. (D.E. 11-1, Page 207). Reliable's claims for reimbursement were initially denied by Trailblazer. (D.E. 11-1, Page 207). Plaintiff sought review of the denial but the decision was affirmed at all administrative levels, including by an administrative law judge ("ALJ") after a hearing. (D.E. 11-1, Pages 33-57). The final administrative decision affirming the denial of benefits was issued by the Secretary on November 1, 2017. (D.E. 11-1, Pages 1-8). Plaintiff seeks a review of that decision pursuant to 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id*.

> Further, the Fifth Circuit has held that:
>
> The summary judgment procedure is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency. The explanation for this lies in the relationship between the summary judgment standard of no genuine issue of material fact and the nature of the judicial review of administrative decisions…[T]he administrative agency is the fact finder. Judicial review has the function of determining whether the administrative action is consistent with the law- that and no more."

*Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214-15 (5th Cir. 1996) (citation omitted) ("[T]he district court properly focused on whether the Secretary's decision is supposed by substantial evidence in the administrative record").

## B. THE SECRETARY'S DECISION

Federal courts may overturn a decision of the Secretary "only if it is arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole." *Texas Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) (quoting *Sun Towers, Inc. v. Schweiker (Sun Towers 1)*, 694 F.2d 1036, 1038 (5th Cir. 1983)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Girling*, 85 F.3d at 215 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In reviewing an agency's decision under arbitrary and capricious standard, it is presumed the agency's decision is valid and the burden of overcoming the presumption rests with the plaintiff to show the decision was erroneous. *Id*. The standard of review is highly deferential to the administrative agency and a court should not substitute its judgment for that of the agency. *Texas Clinical Labs*, 612 F.3d at 775 (citing *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Inc. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Purely legal questions are reviewed *de novo*, giving deference to the agency's interpretation of statutes and regulations as appropriate. *Texas Clinical Labs*, 612 F.3d at 775 (citing *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004)). Coverage decisions should be

based upon a common sense, non-technical consideration of the patient's condition as a whole. *Estate of Morris*, 207 F.3d 744, 745 (5th Cir. 2000).

IV. **DISCUSSION**

> Medicare covers ambulance services…only if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated. The beneficiary's condition must require both the ambulance transportation itself and the level of service provided in order for the billed service to be considered medically necessary. Nonemergency transportation by ambulance is appropriate if either: the beneficiary is bed-confined,[1] and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement is such that transportation by ambulance is medically required. Thus, bed confinement is not the sole criterion in determining the medical necessity of ambulance transportation. It is one factor that is considered in medical necessity determinations.

42 C.F.R. § 410.40(d)(1).

Additionally, to cover "medically necessary nonemergency, scheduled, repetitive ambulance services" the ambulance provider, before the service, should obtain a written order from the beneficiary's attending physician certifying medical necessity as described above. 42 C.F.R. § 410.40(d)(2)(i). However, "[t]he presence of the signed physician certification statement does not alone demonstrate that the ambulance transport was medically necessary." 42 C.F.R. § 410.40(d)(2)(ii). Further, there are origin and destination requirements for ambulance service, relevant to this case that a beneficiary

---

[1] To be considered bed-confined, a beneficiary must be unable to get up from bed without assistance, unable to ambulate, and unable to sit in a chair or wheelchair. 42 C.F.R. § 410.40(d)(1)(i)-(iii).

may be transported to a hospital for treatment from her residence. 42 C.F.R. § 410.40(e).[2]

In this case, the Secretary determined Medicare does not cover the ambulance services at issue because the record did not support a finding that the beneficiary had an illness or injury that contraindicated transportation by other means. (D.E. 11-1, Pages 4 and 55). The issue is whether substantial evidence supports the Secretary's decision.

The beneficiary's doctor signed a Physician Certification Statement ("PCS") on March 10, 2012, covering the dates of service at issue stating:

> Pt with Bilat Heel Pressure Wounds/Ulcers, Requires Special Positioning, Severe Muscle Weakness resulting in Weak Upper Trunk Control, Hypertension, Diabetes Mellitus, Fatigue/Malaise/Lethargic, C/O Pain to Bilat Heel Ulcers, Peripheral Vascular Disease, Pt is Non-Weight Bearing, Osteoporosis, Other Modes of Transportation are Contra-indicated due to Patients Debilitations. Patient to be transported from/to Her Residence to/from Her Wound Care/Debridement Treatments.

(D.E. 11-1, Page 220). Reliable's records show that, on each occasion, the ambulance technicians loaded the beneficiary from her bed onto a stretcher using a two-man drawsheet method, noting the beneficiary was bed-ridden, unable to walk or stand, having poor upper trunk control as well as poor motor function due to stiffness or weakness. The beneficiary is also noted of complaining of minor pain in her bilateral heels due to diabetic ulcers. (D.E. 11-1, Pages 208-219). While being transported from

---

[2]Initially, there was a dispute as to whether the beneficiary was transported from her residence to a hospital for treatment, which, if all other conditions are met, could be covered as opposed to transport to a physician's office, which could not. There is now no disagreement the beneficiary was transported to and from her home and a hospital. Plaintiff asserts the Secretary, after the initial determination, should have confined the review to just this issue and not medical necessity. However, it is clear the ALJ properly reviewed and considered all issues *de novo*. 42 C.F.R. §§ 405.1000(d) and 405.1032(a).

the hospital, Reliable's records indicate the beneficiary was transferred from a hospital bed or stretcher to the ambulance stretcher, again using the two man draw sheet method. (D.E. 11-1, Pages 208-219).

In the hearing conducted for the Secretary's *de novo* review before the ALJ, Fernando Canseco, the only witness and Reliable's President and sole shareholder, testified the beneficiary was being transported between her residence and a hospital for her treatment and Reliable's records indicated the beneficiary was debilitated. (D.E. 11-1, Pages 426-427). He further testified the beneficiary required special positioning and transportation because of the amount of pain the beneficiary had, along with weak upper trunk control, fatigue and malaise. (D.E. 11-1, Page 427).[3]

There is no dispute Reliable had a PCS on record as needed for when repetitive, nonemergency ambulance services are provided. 42 U.S.C. § 410.40(d)(2); (D.E. 11-1, Page 220). There is also no dispute the beneficiary was transported between her residence and a hospital for receipt of hyperbaric wound care. (D.E. 11-1, Pages 6-7 and 34). However, the Secretary determined the record did not support a finding that other means of transportation were contraindicated as the ambulance reports did not provide a detailed description of the beneficiary's condition at the time of transport, specifically whether the beneficiary was able to sit in a chair or wheelchair or whether there were any

---

[3]Defendant objects to Reliable's submission of new evidence not included in the administrative record, specifically the affidavit of Mr. Canseco. (D.E. 21-1). However, an analysis regarding the admissibility of this affidavit is not necessary in this instance as it is clearly incorrect on its face. In the affidavit, Mr. Canseco avers the beneficiary was transported on the dates in question "from her home to the nearest dialysis center and back home after treatment." (D.E. 21-1, Page 2). The record is clear the beneficiary was transported for heel treatment, not dialysis.

neurological deficits or any other medical conditions with documented symptoms and findings supporting coverage. (D.E. 11-1, Pages 4 and 55-57).

"[E]ven in cases of severe illness or extreme fragility, ambulance transport may not be justified." *See Momentum EMS, Inc. v. Sebelius*, No. 4:11-cv-298, 2014 WL 199061, at *4-5 (S.D. Tex. Jan. 13, 2014) (The Medicare Benefit Policy Manual "lists examples of patients for whom ambulance can be considered 'medically required,' including patients who must be restrained to prevent injuring themselves or others; patients who are unconscious, 'severely hemorrhaging,' or require emergency oxygen during the trip; cases of acute respiratory or cardiac distress, or an acute stroke; patients with bone fractures; or patients who can only be moved by stretcher.") "Even if medical personnel might believe that ambulance transport is in the patient's 'best interests,' Medicare will not cover ambulance trips for patients whose conditions do not rise to the level set out in the regulations." *Id*. (citation omitted) ("Even when transport by other means, such as personal vehicle or wheelchair van is impractical or difficult, or wholly unavailable, Medicare will not pay for ambulance trips that are not 'medically necessary.'")

As described above, the undersigned finds the ambulance run sheets and the PCS both provide limited descriptions of the beneficiary's medical conditions, detailed by the use of a two-person draw sheet to transport the beneficiary, as well as the ultimate conclusion that the beneficiary was bed confined and other means of transport were contraindicated. However, as noted by the Secretary, the descriptions do not indicate whether the beneficiary was able to sit in a chair or wheelchair and further do not provide

a detailed description of the beneficiary's conditions and/or functional limitations as to medical necessity of only ambulance transport. 42 C.F.R. § 410.40(d)(1)(i)-(iii). The Secretary thoroughly considered each of Reliable's ambulance run sheets and found they did not contain sufficient information. (D.E. 11-1, Pages 3-8 and 34-38); *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43. Additionally, there is no other supporting medical documentation of the beneficiary's conditions and limitations in the record. *U.S. v. Read*, 710 F.3d 219, 228 (5th Cir. 2012); 42 C.F.R. § 410.40(d)(3)(v) ("The presence of a signed certification statement or signed return receipt does not alone demonstrate that the ambulance transport was necessary.")

## V. CONCLUSION

Given the deference required to the Secretary's determination, this Court will not substitute its judgment upon review of the record in this case. *Texas Clinical Labs*, 612 F.3d at 775. Therefore, the undersigned finds the Secretary applied the correct law and the Secretary's decision is support by substantial evidence. Accordingly, Reliable's Motion for Summary Judgment is **DENIED** and the Secretary's Motion for Summary Judgment is **GRANTED**.

ORDERED this 23rd day of November, 2018.

_____
Jason B. Libby
United States Magistrate Judge